UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 OCT -9 PM 1:34

CLERK

BY _____
DEPUTY CLERK

EDWARD THOMAS KENNEDY,                )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Case No.: 5:18-cv-139
                                      )
STATE OF VERMONT, VERMONT BAR         )
ASSOCIATION, VERMONT LAW              )
SCHOOL, and AMERICAN BAR              )
ASSOCIATION,                          )
                                      )
        Defendants.                   )

**ORDER**
**(Doc. 1)**

Plaintiff Edward Thomas Kennedy, representing himself as one of the "people of

Pennsylvania," commenced this civil action on August 28, 2018 by filing an application for leave

to proceed *in forma pauperis* under 28 U.S.C. § 1915 (Doc. 1), together with a proposed

complaint (Doc. 1-2).  The proposed complaint alleges that Defendants the State of Vermont, the

Vermont Bar Association (VBA), Vermont Law School (VLS), and the American Bar

Association (ABA) unlawfully denied him admission to VLS.  (Doc. 1-2 ¶ 4.)  Plaintiff's motion

to proceed *in forma pauperis* is accompanied by an affidavit that makes the showing required

under § 1915(a).  (*See* Doc. 1-1.)  Accordingly, the request to proceed *in forma pauperis* (Doc. 1)

is GRANTED.  However, for the reasons set forth below, the complaint is DISMISSED.

**Background**

Plaintiff asserts that VLS (and other ABA accredited law schools) rejected his law school

application because he refused to take the Law School Admission Test (LSAT) and its "logic

games."  (Doc. 1-2 ¶ 9.)  He claims that Defendants "stole access to his private data such as

school transcripts and funds from Kennedy and rejected his applications."  (*Id.* ¶ 10.)  He further

claims that Defendants' "business models" "restrain[] trade in professional law advice" and are "based on a foundation of false advertising, deceptions, and lies." (*Id.* ¶¶ 1(c), 29.) According to Plaintiff, the ABA and VBA business model and policies "contributed to Plaintiff Kennedy's kidnapping and incarceration from August 28, 201[7] to August 30, 201[7] in two Commonwealth of Pennsylvania prisons in a cage in solitary confinement like conditions." (*Id.* ¶ 1(d).)[1]

Plaintiff asserts eight claims: (1) trespass; (2) trespass on the case; (3) trespass on the case—vicarious liability; (4) "failure to provide a republican form of government and false advertising"; (5) intentional infliction of emotional distress (IIED); (6) restraint of trade; (7) bad faith; and (8) negligence. (*See* Doc. 1-2.) Plaintiff references the "law of the case," and has attached to his proposed complaint a nine-page recitation under that heading. (*Id.* at 16–24.)[2] He seeks damages exceeding $1.5 million from each defendant, declaratory judgment, an order that VLS admit him tuition-free, and that he be granted authority to practice law. (*See id.* ¶¶ 50–61.)

---

[1] The proposed complaint indicates that the alleged kidnapping and incarceration occurred between August 28 and 30, "2018," but since the pleading is itself dated August 15, 2018, the court presumes that this was a typo.

[2] Plaintiff's law-of-the-case exposition appears to be largely irrelevant to any matter in this case. The court notes that the law-of-the-case filing appears reminiscent of the types of lengthy and circuitous arguments that are commonly advanced by "sovereign citizens." The Second Circuit has described "sovereign citizens" as a "loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior," and has noted that the FBI has labeled sovereign citizens as a "domestic terrorist group." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013) (summary order); *see generally* Francis X. Sullivan, Comment, *The "Usurping Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement*, 1999 Wis. L. Rev. 785 (1999).

## Analysis

### I.    Standard Under § 1915(e)(2)(B)

Under the *in forma pauperis* statute, the court conducts an initial screening of the complaint. *See* 28 U.S.C. § 1915(e)(2). The court is required to read a pro se plaintiff's complaint liberally and construe it to raise the strongest arguments it suggests. *Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam). Nevertheless, the court may dismiss a proposed complaint where it finds that the action is "frivolous or malicious," fails to state a claim upon which relief can be granted, or where monetary relief is sought "against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint can be dismissed as "frivolous" if, among other things, it constitutes "repeated litigation of issues already determined." *Anderson v. Coughlin*, 700 F.2d 37, 43 (2d Cir. 1983). The court applies the standard in Fed. R. Civ. P. 12(b)(6) to determine whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *See Hester-Bey v. E. Dist. Court Officer*, No. 13 CV 4656(CBA)(LB), 2014 WL 1761028, at *3 n.5 (E.D.N.Y. Apr. 9, 2014) (noting that § 1915(e)(2)(B)(ii) incorporates the Rule 12(b)(6) standard by reference). To survive a Rule 12(b)(6) motion, a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 252 (2d Cir. 2018) (alteration in original) (quoting *Irrera v. Humpherys*, 859 F.3d 196, 198 (2d Cir. 2017)).

### II.    Malicious Filing (Section 1915(e)(2)(B)(i))

At least a portion of Plaintiff's proposed complaint appears to have been filed maliciously. The proposed complaint references conduct that Plaintiff says contributed to his "kidnapping" and incarceration from August 28–30, 2017. (Doc. 1-2 ¶ 1(c).) The court takes

notice of the recent decision in *Kennedy v. Getz*, No. 18-CV-3532, 2018 WL 4094967 (E.D. Pa. Aug. 27, 2018).[3] The *Getz* court noted that Mr. Kennedy is a "frequent litigant" and listed ten separate prior actions that he had initiated in that court since October 2017, as well as four other cases filed by Mr. Kennedy in the Middle District of Pennsylvania since March 2018. *See Getz*, 2018 WL 4094967, at *1–2 & n.1. In *Getz*, Mr. Kennedy claimed that Bradley J. Getz and others injured him on June 2, 2017, and that multiple defendants named in that case kidnapped him on August 28, 2017. *Id.* at *2. He asserted claims of trespass, trespass on the case, trespass on the case—vicarious liability, failure to provide a republican form of government, and IIED. *Id.*

The *Getz* court found Mr. Kennedy's complaint to be malicious "because he is once again raising claims concerning the events of June 2, 2017, August 28, 2017, as well as his incarceration from August 28–30, 2017." *Id.* at *3. The court noted that those claims had been asserted in a prior civil action that was still pending, and that "[t]his is the third lawsuit that Kennedy has filed in this Court with respect to these events. Each time, he names new individuals as Defendants." *Id.* The court cautioned Mr. Kennedy that, if he sought to clarify his claims regarding those events, he should seek leave to amend in his preexisting case rather than filing multiple lawsuits. *Id.* The court also cautioned Mr. Kennedy that "filing a new case regarding these same events may result in restriction of his filing privileges." *Id.* at *4.

In light of *Getz*, this court concludes that Plaintiff's proposed complaint is malicious insofar as it is related to the events of August 28–30, 2017. But Plaintiff's proposed complaint in

---

[3] The court may take judicial notice of documents filed in other courts "to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Shahi v. Standard Fire Ins. Co.*, No. 5:10-cv-15, 2012 WL 13085373, at *1 (D. Vt. Aug. 9, 2012) ("A federal court can take judicial notice of proceedings in other courts, both within and outside of the federal system, if the proceedings have a direct relation to matters at issue.").

this case seems to be focused particularly on recent action by VLS denying him admission.  The court discusses the claims stemming from that denial below.

### III.    Failure to State a Claim (Section 1915(e)(2)(B)(ii))

#### A.    Section 1983 Claim

Plaintiff asserts that his proposed complaint raises "a federal question matter," and that he was "kept in constructive financial imprisonment" "under color of law" causing deprivations to his liberty and property.  (Doc. 1-2 ¶¶ 2, 5.)  The court accordingly construes the proposed complaint as brought under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'"  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)).

The State of Vermont is not a proper § 1983 defendant because "states are not persons within the meaning of that statute." *Rothstein v. Wyman*, 467 F.2d 226, 237–38 (2d Cir. 1972); *see also Shine v. Hofman*, 548 F. Supp. 2d 112, 122 (D. Vt. 2008) (same).  The ABA and the VBA are not state actors for § 1983 purposes. *See Muhammad v. Smith*, No. 3:13-cv-760 (MAD/DEP), 2014 WL 3670609, at *5–6 (N.D.N.Y. July 23, 2014); *see also Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1385 (7th Cir. 1992) ("[P]rivate bar associations are not state actors for the purpose of Section 1983 . . . .").  VLS—a private educational institution—is also not a state actor. *See Altschuler v. Univ. of Pa. Sch. of Law*, 201 F.3d 430 (2d Cir. 1999) (unpublished). The court therefore concludes that Plaintiff has failed to state a § 1983 claim.

**B.    Other Claims**

Most of the enumerated counts in Plaintiff's proposed complaint appear to be state-law claims.  The only evident exceptions are Plaintiff's claim of a violation of the Guarantee Clause of Article IV, section 4, of the United States Constitution (Count Four), and his claim of a violation of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. (Count Six).  Neither claim is plausible.

**1.    Guarantee Clause**

The Guarantee Clause provides: "The United States shall guarantee to every State in this Union a Republican Form of Government."  U.S. Const. art. IV, § 4.  The Second Circuit and other courts have "repeatedly noted" that allegations of Guarantee Clause violations are generally "nonjusticiable political questions."  *United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty., N.Y.*, 712 F.3d 761, 774 (2d Cir. 2013).  Even if Plaintiff's claim was justiciable, it fails to state a plausible Guarantee Clause violation.  None of Plaintiff's allegations suggest any conduct indicating a deprivation of a republican form of government.

**2.    Sherman Act**

Plaintiff alleges that Defendants "restrain trade in legal services" and that the State of Vermont has granted a "monopoly" to the VBA and to VBA members to practice law.  (Doc. 1-2 ¶¶ 35–36.)  The court interprets these as claims under Sections 1 and 2 of the Sherman Act. Under Section 1, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1.  Section 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed guilty of a felony."  *Id.* § 2.

Although Sections 1 and 2 describe violations as felonies (criminal conduct that would ordinarily be prosecuted by a government), "[p]rivate causes of action for Sherman Act violations are permitted by Section 4 of the Clayton Act." *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 500 (S.D.N.Y. 2001) (citing 15 U.S.C. § 15 and *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529 (1983)).

Plaintiff's Sherman Act claims against the State of Vermont fail under the doctrine of state-action immunity. That doctrine holds that the Sherman Act does not proscribe activity "required by the State acting as sovereign." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 790 (1975) (citing *Parker v. Brown*, 317 U.S. 341, 350 (1943)). With respect to the practice of law, the Supreme Court has recognized "that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Id.* at 792. Further, "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental functioning of administering justice, and have historically been 'officers of the courts.'" *Id.* As a result, no Sherman Act claim can arise from the fact that the State of Vermont reserves to itself a monopoly on bar admission.

It is true that "certain anticompetitive conduct by lawyers is within the reach of the Sherman Act." *Id.* at 793. Thus the Sherman Act was implicated when the Virginia State Bar— a state agency in that state—"voluntarily joined in what is essentially a private anticompetitive

activity" by enforcing a minimum-fee schedule for lawyers.[4]  Plaintiff's allegations do not suggest conduct of that sort.

As for Plaintiff's claim that the remaining Defendants—the ABA, VBA, and VLS—engage in the "restraint of trade" in legal services, the court considers the elements necessary to prove a Section 1 claim.  First, "a plaintiff must present evidence of 'a combination or some form of concerted action between at least two legally distinct economic entities' in the form of 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87 (2d Cir. 2018) (quoting *United States v. Apple, Inc.*, 791 F.3d 290, 313, 315 (2d Cir. 2015)).  "[T]he plaintiff must then establish that the agreement's objective was an 'unreasonable restraint of trade either per se or under the rule of reason.'"  *Id.* (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993)).

Plaintiff fails to allege any concerted action between the ABA, VBA, or VLS.  He repeatedly asserts that the ABA, VBA, and VLS acted "in concert with each other" and that all Defendants are "agents" of the others.  (Doc. 1-2 ¶ 4; *see also id.* ¶¶ 6–8, 23.)  But Plaintiff alleges no facts to support his conclusory assertions of an "agreement" by those defendants. *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

---

[4] Insofar as Plaintiff asserts that the State of Vermont grants a monopoly to the VBA or to VBA members, the court notes that Vermont's state bar association is different than Virginia's at the time of the *Goldfarb* case.  The VBA is a voluntary association, not a state agency, and membership in the VBA is not necessary to practice law in Vermont.  The responsibility for regulating the practice of law within Vermont is "unique" to the Vermont Supreme Court.  *In re Grundstein*, 2018 VT 10, ¶ 23 (citing Vt. Const. ch. II, § 30).

Moreover, Plaintiff fails to allege a per se unreasonable restraint of trade or a violation of Section 1 under the rule of reason. "Conduct considered illegal per se is invoked only in a limited class of cases, where a defendant's actions are so plainly harmful to competition and so obviously lacking in any redeeming pro-competitive values that they are conclusively presumed illegal without further examination." *Capital Imaging*, 996 F.2d at 542 (citations and internal quotation marks omitted). "Most cases fall outside these narrow, carefully demarcated categories held to be illegal *per se*." *Id.* at 543. This case is no exception: the proposed complaint does not allege horizontal or vertical price-fixing, group boycotts, or any of the other categories of per se illegal conduct.

To prove antitrust injury under the rule of reason, Plaintiff "bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove [he] has been harmed as an individual competitor will not suffice." *Id.* The proposed complaint fails to allege any facts that would satisfy that initial burden. Plaintiff alleges that *he* was harmed because VLS and other law schools have rejected his applications for failure to take the LSAT, and because of certain unspecified "business models" of VLS, the ABA, and the VBA. But Plaintiff alleges no facts suggesting any detrimental effects on competition as a whole. There is no allegation, for instance, that the output of law school graduates is diminished because of the use of the LSAT or the accreditation process for law schools.

## IV.    Eleventh Amendment Immunity—State of Vermont (Section 1915(e)(2)(B)(iii))

In addition to the defects identified above, Plaintiff's claim for damages against the State of Vermont is barred by Vermont's Eleventh Amendment sovereign immunity. Under the Eleventh Amendment, a state's treasury is immune "from claims for damages brought by private

9

entities in federal courts." *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015). This

immunity is not absolute—it can be waived by the State—but Vermont has expressly preserved

its Eleventh Amendment immunity. *See* 12 V.S.A. § 5601(g) ("Nothing in this chapter waives

the rights of the State under the Eleventh Amendment of the U.S. Constitution.").

## V.    Leave to Amend

The Second Circuit has held that district courts should not dismiss the claim of a self-

represented party without granting leave to amend at least once "when a liberal reading of the

complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d

290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also*

Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so

requires."). However, leave to amend the complaint is not required where an amendment would

be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with

[plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would

thus be futile. Such a futile request to replead should be denied.").

Here, better pleading will not cure the malicious-filing and Eleventh Amendment

immunity defects in the proposed complaint. Better pleading will also not nudge any of

Plaintiff's federal claims across the line from conceivable to plausible. Plaintiff complains that

he was denied admission to VLS for refusing to take the LSAT. No plausible federal claim

arises from that circumstance.[5] The court declines to exercise supplemental jurisdiction over

Plaintiff's state-law claims under 28 U.S.C. § 1367(c)(3).

---

[5] Some cases discuss claims that use of the LSAT is discriminatory or violates the
Americans with Disabilities Act (ADA). In *Clyburn v. Shields*, 33 F. App'x 552, 554–55
(2d Cir. 2002) (summary order), the court held that allegations that law school officials were
aware that the LSAT disproportionately affects African American law school applicants yet
continued to use it as an admissions criterion were insufficient to state a claim for intentional

## Conclusion

Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. 1) is GRANTED.

Plaintiff's federal claims are DISMISSED under 28 U.S.C. § 1915(e)(2)(B).  Plaintiff's state-law claims are DISMISSED without prejudice.

The court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

Dated at Rutland, in the District of Vermont, this 9 day of October, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court

---

discrimination.  The court in *Binno v. American Bar Association*, 826 F.3d 338 (6th Cir. 2016), affirmed the dismissal of the claims of a legally blind law school applicant brought against the ABA that the LSAT (and its "logic games," in particular) has a discriminatory effect on the blind and visually impaired.  Even the most liberal reading of Plaintiff's proposed complaint does not suggest any claim of that variety, and such claims would face significant hurdles for the reasons stated in *Clyburn* and *Binno*.

11